■ SERGEANTS BENEVOLENT ASSOCIATION ANNUITY FUND, Appellant, v JOHN T. RENCK et al., Respondents, et al., Defendants. [796 NYS2d 77]—

Order, Supreme Court, New York County (Herman Cahn, J.), entered April 8, 2004, which, insofar as appealed from, granted the Renck defendants' motion to dismiss all claims asserted against them in their individual capacities for failure to state a cause of action, reversed, on the law, without costs or disbursements, the motion denied, and all such claims reinstated.

Plaintiff (Fund) is a trust that manages annuity payments on behalf of New York City police sergeants and their beneficiaries, holding over $100,000 in investment moneys. Defendant Monitoring and Evaluation Services (MES) is an investment advisor and management firm that contracted with the Fund to act as its investment consultant and supervise the portfolio managers that managed the Fund's assets. The individual defendants, John T. Renck and John J. Renck, father and son, are, respectively, the president and vice-president of MES. The complaint alleges, inter alia, that defendants breached their contractual and fiduciary obligations by failing to advise the Fund properly, overcharging for commissions and retaining, for their own personal benefit, portions of commissions that were to be refunded to the Fund.

The complaint asserted various causes of action against the Rencks in their individual capacities. The first, second and fourth causes of action alleged breach of fiduciary duty in failing to rebalance the Fund's asset allocation when they deviated from the Fund's asset allocation model and investment policy, charging undisclosed, excessive markups and excessive commissions and failing to terminate defendant Trainer Wortham, a portfolio manager that had failed to follow the Fund's investment objectives and underperformed. The fifth, eighth and eleventh causes of action asserted claims for negligent mismanagement, unjust enrichment and an accounting.

In July 2003, the Rencks moved pursuant to CPLR 3211 (a) (1) and (7) to dismiss the first, second, fourth, fifth, eighth and eleventh causes of action insofar as they were brought against them in their individual capacities. They noted that only John T. Renck had signed the agreement between MES and the Fund and that he did so in his capacity as MES's president, not in his individual capacity. They also asserted that MES did not provide investment advice or make investment decisions and that its role was limited to a reporting function, that Trainer Wortham, not MES or the Rencks, was responsible for managing its portion of Fund assets and that the complaint failed to allege a fiduciary relationship between the Fund and the Rencks.

The court granted the motion in its entirety. Concluding that the factual allegations of the complaint are not sufficient to demonstrate the existence of a fiduciary duty owed to the Fund by the Rencks in their individual capacities, the court held that nothing in the agreement between the Fund and MES indicates a fiduciary relationship between the Fund and the Rencks individually, and that there were no allegations regarding conduct by the Rencks outside the scope of the agreement that might support a finding of such a relationship developed over time. As to the fifth cause of action for negligent mismanagement, the court, noting the absence of factual allegations regarding the existence of a separate legal duty owed by the Rencks individually, held that this cause of action was duplicative of the seventh cause of action for breach of contract asserted against MES, as merely an attempt to recast in tort the duties the contract allegedly imposed on MES. The court found the eighth cause of action for unjust enrichment fatally defective, noting that the existence of a contract governing a particular subject matter precludes recovery in quasi contract for events arising out of the same subject matter, and concluding that the agreement governs the amount of commission to which MES is entitled and that the Fund does not allege that the Rencks were paid personally or that they acted in other than a corporate capacity. Finally, the court held that since the right to an accounting is premised on the existence of a confidential or fiduciary relationship, the cause of action for an accounting was fatally defective in view of dismissal of the claims against the Rencks based on breach of fiduciary duty. Since we conclude that the factual allegations of the complaint state cognizable claims against the Rencks in their individual capacities, we reverse.

The complaint alleges that the Rencks provided investment advice to the Trustees regarding asset allocation, portfolio

manager selection, investment objectives, investment guidelines and transaction costs. It further alleges that because the Rencks held themselves out as experienced in the field of investment consulting and management, the Trustees, who did not possess sophisticated knowledge of investment management, relied on their expertise. These allegations are sufficient to raise a factual issue regarding the existence of a fiduciary duty (*see Bestolife Corp. v American Amicable Life*, 5 AD3d 211, 216 [2004]). In determining whether a fiduciary relationship exists, "a court will look to whether a party reposed confidence in another and reasonably relied on the other's superior expertise or knowledge" (*Wiener v Lazard Freres & Co.*, 241 AD2d 114, 122 [1998]).

While the Rencks assert that the Fund's allegations are contradicted by the documentary evidence, i.e., the agreement between MES and the Fund, which does not expressly impose fiduciary obligations on MES or the Rencks, liability for breach of a fiduciary duty "is not dependent solely upon an agreement or contractual relation between the fiduciary and the beneficiary but results from the relation" (Restatement [Second] of Torts § 874, Comment *b*). "[I]t is not mandatory that a fiduciary relationship be formalized in writing . . . . Thus, the ongoing conduct between parties may give rise to a fiduciary relationship that will be recognized by the courts" (*Wiener,* 241 AD2d at 122; *see also Frydman & Co. v Credit Suisse First Boston Corp.,* 272 AD2d 236, 237 [2000]). Contrary to the dissent's suggestion, this case does not involve an attempt to pierce the corporate veil. A corporate officer can be held personally liable for his tortious conduct (*see W. Joseph McPhillips, Inc. v Ellis,* 278 AD2d 682, 684 [2000]).* That *McPhillips* did not involve a claim for breach of fiduciary duty is of no moment. Liability was predicated on the commission of a tort, and breach of fiduciary duty is a tort (*see Buchwald & Assoc. v Rich,* 281 AD2d 329, 330 [2001]; *Batas v Prudential Ins. Co. of Am.,* 281 AD2d 260, 263 [2001]). The particular tort committed is of little significance. The dissent's reliance on *Northeast Gen. Corp. v Wellington Adv.* (82 NY2d 158 [1993]), an appeal from the grant of the defendants' motion to set aside the jury's verdict and for judgment in their favor, is misplaced, since that determination was made not on a motion to dismiss but after a full trial.

---

* The dissent misapprehends our reliance on *McPhillips*. We do not cite it for the proposition that a fiduciary relationship may have existed between plaintiff and the Rencks, but only to show that a corporate officer may be held personally liable for his tortious conduct. As we have stated, it was the ongoing conduct between the parties that raises a factual issue as to the existence of such a relationship.

Indeed, the majority opinion in *Northeast Gen. Corp.* noted that "the contract and relationship of the parties must be plumbed" (*id.* at 162) to determine whether a fiduciary relationship exists.

The Rencks' argument that the Fund fails to allege that its damages were caused by their alleged breach is without merit. Plaintiff's allegations in this regard are sufficient; it alleges that under the Rencks' guidance, the Fund's asset allocation ballooned from 60% equities—consistent with the asset allocation model—to 81% equities, and that when the Internet bubble burst and the stock market declined, the Fund was so heavily weighted with equities that its value declined from its peak of $144 million to $107 million. The Rencks' and MES's failure to balance the Fund in accordance with the asset allocation model, plaintiff alleges, caused the Fund to suffer a loss of approximately $12 million, a greater loss than it would have suffered had it been properly rebalanced on a quarterly or monthly basis. Accordingly, the breach of fiduciary duty claims against the Rencks should be reinstated. Since the complaint sufficiently alleges a breach of fiduciary duty with respect to property in which plaintiff has an interest, the claim for an accounting should also be reinstated (*see Adam v Cutner & Rathkopf*, 238 AD2d 234 [1997]).

The dismissal of the negligent mismanagement claim was also erroneous. "[A] claim arising out of an alleged breach of contract . . . may not be converted into a tort action absent the violation of a legal duty independent of that created in the contract" (*Givoldi, Inc. v United Parcel Serv.*, 286 AD2d 220, 221 [2001]; *see also Scott v KeyCorp*, 247 AD2d 722, 725 [1998]). Noting that both the negligence and breach of contract claims contain allegations of advice given by the Rencks and MES regarding asset allocation and their supervision of the portfolio managers, the Rencks contend that the negligence claim against them is duplicative of the breach of contract claim against MES and that they owed the Fund no duties beyond the scope of the agreement. Since we have concluded, however, that a claim for breach of fiduciary duty has been sufficiently pleaded, a duty on the part of the Rencks beyond the scope of the agreement has been alleged and the negligence claim should be reinstated.

The unjust enrichment claim was also improperly dismissed. "A cause of action for unjust enrichment is stated where 'plaintiffs have properly asserted that a benefit was bestowed. . . by plaintiffs and that defendants will obtain such benefit without adequately compensating plaintiffs therefor' " (*Wiener v Lazard Freres & Co., supra*, 241 AD2d at 119, quoting *Tarrytown House Condominiums v Hainje*, 161 AD2d 310, 313

[1990]). While "the existence of a valid and enforceable written contract precludes recovery on a theory of unjust enrichment" (*Cornhusker Farms v Hunts Point Coop. Mkt.*, 2 AD3d 201, 206 [2003]), the unjust enrichment claim here, based on the Rencks' alleged retention of funds to which they were not entitled, is predicated on conduct not covered by the contract. Concur—Sullivan, Gonzalez and Catterson, JJ.

Tom, J.P., dissents in a memorandum as follows: Since the contract between plaintiff Sergeants Benevolent Association (SBA) Annuity Fund and defendant Monitoring and Evaluation Services (MES) provides for the specific services rendered by the corporation, there is no basis to hold the corporate officers, John T. Renck and John J. Renck, individually liable for any alleged breach, whether under the contract or on any other basis. Therefore, I respectfully dissent and would affirm the order dismissing all causes of action against said individual defendants.

SBA is a collective bargaining unit for New York City police sergeants. The Annuity Fund is a trust which administers, invests and oversees annuity payments to SBA members and their beneficiaries. It is managed by the Annuity Fund Trustees, who are elected officers of the SBA. Individual defendants John T. Renck and John J. Renck are, respectively, the president and vice-president of MES, which was engaged by the Annuity Fund to serve as its investment consultant from September 1, 1994 to December 31, 2002. At the time of the losses alleged in the complaint, trust assets were distributed among six individual funds managed by six portfolio managers, including defendant Trainer Wortham & Co.

MES was retained by the Annuity Fund pursuant to a written contract entitled "Investment Consultant Services Agreement," which assigns MES a limited reporting function. The contractual duties to be undertaken by the corporate defendant appear under a single heading, which states: "Quarter annual performance measurement reports will be provided to the Trustees of the Annuity Trust Fund that will monitor the investment manager's [sic] return." The Services Agreement proceeds to list, as subheadings A through G, the purpose of the various reports to be prepared by MES: monitoring performance with respect to asset allocation guidelines, supplying statistics on market activity and asset value, stating total return by asset class and providing the total return, both by investment manager and for the entire portfolio. In addition, the contract provides for interim reports to be furnished "upon reasonable request of the Trustees," and for assistance "in conducting

investment management searches when the Trustees determine revision of asset allocations [is] necessary." Pursuant to the Services Agreement, only the corporation undertook the duties of investment consultant, not its president, defendant John T. Renck, who signed the contract in his corporate capacity, nor its vice-president, defendant John J. Renck, who did not sign it at all.

Despite the limited reporting function conferred upon defendant MES under unambiguous terms of the contract, the complaint seeks to recover not only against the corporation but also against the Rencks, individually, for a claimed investment loss and associated expenses. While some damages sought to be recovered, such as alleged commission overcharges, sound in contract, the main claim seeks to dispense with the contract altogether and to recover for the investment loss on the ground that the three defendants (collectively, the MES defendants) functioned in a fiduciary capacity.

This action arises out of the precipitous financial market declines that followed the so-called bursting of the high-tech bubble in late 2001, which produced broad declines in the financial markets generally.[1] The complaint asserts that some $21 million in losses were sustained by the Annuity Fund because "the Fund was poorly equipped to weather the ensuing storm since it was so heavily weigh[t]ed in equities."[2] The investment loss sought to be recovered in this action is confined to the negative returns produced by defendant Trainer Wortham in the management of its portfolio's assets, allegedly because its fund's investments were "concentrated in highly volatile technology, communication, and Internet stock."

The agreement confers no authority—and imposes no commensurate duty—on MES or its principals to engage in securities transactions, direct the management of the individual portfolios, reallocate fund assets or terminate the services of the

---

**1.** According to a report prepared by defendant MES for the third quarter of 2001, plaintiff Annuity Fund's overall equity holdings declined less than the general market (12.99% for the fund, 14.68% for the Standard and Poors 500 index). A similar report for the third quarter of 2002 indicates that the Annuity Fund's equity holdings were declining in tandem with the market (17.26% for the fund, 17.28% for the Standard and Poors 500 index).

**2.** $12 million of the total investment loss of some $21 million is alleged to have resulted from the failure to rebalance the Annuity Fund's assets in accordance with its investment allocation model (first cause of action) and approximately $9.5 million is alleged to have been lost as a result of the failure to terminate defendant Trainer Wortham as an investment manager (fourth cause of action). Recovery of $500,000 is sought for excessive commission charges (second cause of action).

individual investment managers. Nor does it assign MES any duty to direct the investment advisors in their selection of securities or to rebalance the distribution of assets among the individual investment managers or among different classes of stock under an individual fund manager's control.

The duties asserted to afford a basis for recovery are derived solely from the alleged fiduciary relationship said to have arisen between plaintiff and the MES defendants, and not from the parties' contract. It is therefore anomalous that the complaint fails to specify a single instance in which the MES defendants acted in a fiduciary capacity. Not surprisingly, the record does not disclose any instance in which they invested SBA Annuity Fund assets, directed the allocation of assets, engaged in securities transactions or took any action to engage or discharge a fund manager. Thus, the only support for the asserted fiduciary role of the MES defendants consists of the bare allegations of the complaint. As this Court stated in *Oursler v Women's Interart Ctr.* (170 AD2d 407, 408 [1991]), a "conventional business relationship, without more, does not become a fiduciary relationship by mere allegation."

The complaint attempts to avoid the contractual limitation on the duties imposed on MES and the inherent limitation of recovery to the corporate defendant by the efficient expedient of the fiduciary relationship, alleged to exist not only with the vendor, but also with its corporate officers. It has been recognized that if plaintiff's position were to attain general credence, few contracts would be safe from reformation and many contract disputes would defy summary disposition based upon the bare allegations of a party—proffered evidence which, in the case of a written contract embodying the entire agreement between the parties, is normally obviated by the parol evidence rule.

The obligation that the majority would impose upon Supreme Court to plumb the relationship of the parties based on nothing more than a bald allegation of a fiduciary relationship invites abuse at the expense of judicial economy. If the mere assertion of a breach of trust will suffice to defeat summary judgment, the salutary purpose of CPLR 3016 (b) to deter unfounded claims will be obviated and complaints will be drafted to contain fiduciary allegations for the purpose of avoiding summary dismissal, a prospect that does not bode well for the efficient operation of the Commercial Parts.

The adverse impact on the sanctity of contract posed by the insinuation of fiduciary duties where none were intended was recognized in *Northeast Gen. Corp. v Wellington Adv.* (82 NY2d

158 [1993]). In *Northeast,* the plaintiff undertook "to act 'as a non-exclusive independent investment banker and business consultant' " (*id.* at 160-161) and to locate a suitable business for acquisition. Noting that the parties' agreement "contains no cognizable fiduciary terms or relationship" (*id.* at 162) and that, irrespective of the labels employed, no fiduciary relationship was evinced, the Court declined to impose any fiduciary obligation. To do so, the Court warned, where no fiduciary duties were intended, "would inappropriately propel the courts into reformation of service agreements between commercially knowledgeable parties in this and perhaps countless other situations and transactions as well" (*id.*). While acknowledging "a sympathetic impulse" to impose equity on the situation before it, the Court concluded: "The hard judicial obligation, however, is to be intellectually disciplined against that tug. Instead, courts must focus on the precise law function reposed in them in such circumstances, which is to construe and enforce the meaning and thrust of the contract of the parties" (*id.* at 164).

In sum, the Services Agreement at issue in this matter imposes no fiduciary duties on the MES defendants, and plaintiff has identified no single act performed by the MES defendants in a fiduciary capacity. On this record, "the documentary evidence submitted conclusively establishes a defense to the asserted claims as a matter of law," and plaintiff has supplied no affidavits to remedy the defects in its complaint (*Leon v Martinez,* 84 NY2d 83, 88 [1994]). Thus, if this matter is to be determined as a matter of contract, as it should, the MES defendants have established their entitlement to judgment.

Plaintiff's theory of recovery against the individual defendants is derivative of its claims against MES and even less tenable. The Services Agreement, which was signed by only one of the corporate officers in his capacity as president of MES, did not impose any obligations on the Rencks in their individual capacities, much less impose a fiduciary duty on them (*see Northeast Gen. Corp.,* 82 NY2d at 164 ["If Wellington wanted fiduciary-like relationships or responsibilities, it could have bargained for and specified for [*sic*] them in the contract"]). The Rencks undertook no duties on behalf of plaintiff, they are not parties to the Services Agreement, and there is nothing in the record to remotely suggest they intended to incur any personal liability. Thus, even if plaintiff could establish that a fiduciary relationship existed, any fiduciary duty toward the Annuity Fund devolved upon the corporate defendant, not its employees (*see Westminster Constr. Co. v Sherman,* 160 AD2d 867, 868 [1990]),

as decisions by this Court indicate (*see Bestolife Corp. v American Amicable Life*, 5 AD3d 211, 216 [2004] ["broad language" requiring defendant to advise plaintiff]; *Frydman & Co. v Credit Suisse First Boston Corp.*, 272 AD2d 236 [2000] [negotiations by defendant on behalf of plaintiff]).

The majority ignores the intent of the parties to enter into a services agreement (EPTL 11-2.3 [c] [2]) and the statutory requirement to plead breach of trust with particularity (CPLR 3016 [b]) to find not only defendant MES liable for the asserted breach of fiduciary duty but also its corporate officers. Even where this Court has upheld a breach of fiduciary duty claim against a corporate defendant, we have not imposed personal liability upon the responsible executive (*see Wiener v Lazard Freres & Co.*, 241 AD2d 114, 122-123 [1998]). Significantly, plaintiff herein fails to set forth any basis for piercing the corporate veil in this instance.

The majority's citation to the Fourth Department's decision in *W. Joseph McPhillips, Inc. v Ellis* (278 AD2d 682 [2000]), in support of the proposition that the Rencks can be held liable for their corporation's breach of fiduciary duty, is inapposite. *McPhillips* involved the tort of ordinary negligence, specifically, that corporate officers negligently misrepresented the adequacy of insurance coverage procured for the plaintiff.[3] This tort theory of recovery is conceptually different from the breach of fiduciary duty claimed in the instant case; the fiduciary relationship must first be established before the question of its breach can be entertained (*see Ingle v Glamore Motor Sales*, 73 NY2d 183, 189-190 [1989]). Plaintiff herein has failed to make out a prima facie case that a fiduciary relationship existed between it and the respective defendants. In short, *McPhillips* supports neither the majority's premise that a corporate services contract is subject to modification in equity to impose a fiduciary obligation where none was intended nor the remarkable proposal that a corporate officer may then be held personally accountable for the corporation's alleged breach of the implied fiduciary duty.

Plaintiff's attempt to sidestep the Services Agreement, by merely alleging that a fiduciary relationship developed outside the contract between the Annuity Fund and the Rencks over the course of an eight-year relationship, must fail. The Annuity Fund has not made any factual allegations or submitted any documentary evidence regarding investment advice or other conduct engaged in by the Rencks that is outside the scope of

---

**3.** This Court has declined to endorse a theory of negligent misrepresentation independent of an action in contract (*see Makastchian v Oxford Health Plans*, 270 AD2d 25, 27 [2000]).

the services required to be rendered by MES officers and employees under the Services Agreement. Rather, the correspondence and reports produced by MES and submitted by the Annuity Fund in support of its allegations appear on MES letterhead and were executed by the Rencks solely in their respective corporate capacities.

Finally, the majority's position is directly contrary to a recent ruling by this Court in which the claims advanced by the plaintiff were predicated on a *concededly* fiduciary relationship. In *Guerrand-Hermès v Morgan & Co.* (2 AD3d 235 [2003], *lv denied* 2 NY3d 707 [2004]), we dismissed a claim of breach of fiduciary duty against an investment banker with respect to funds subject to its discretionary trading authority because the plaintiff's stated objective for the trading account had been followed by the defendant. We rejected a further claim based on the failure to dispose of a particular security on the express ground that the defendant "was in compliance with the investment guidelines' diversification requirements" (*id.* at 238). In *Guerrand-Hermès*, we declined to permit the plaintiff to pass the blame for his allocation of assets, among the various investment vehicles available to him, to a defendant that had performed in accordance with the governing contract. There is no justification for fashioning different rules to be applied in the instant matter in order to reach a contrary result.

Plaintiff's first, second and fourth causes of action seek recovery against the MES defendants for breach of fiduciary duty, alleging, respectively, that they failed to rebalance the Annuity Fund's total investment portfolio, charged excessive commissions and failed to timely terminate Trainer Wortham as an investment manager. The fifth cause of action merely restates these claims, this time alleging negligent mismanagement "in selecting and managing the Fund's portfolio managers, failing to direct the re-allocation of the Fund's assets in accord with the Fund's asset allocation model, and in generally failing to act in a reasonable and prudent manner."[4] The eighth cause of action for unjust enrichment charges that the MES defendants received benefits, including commission revenue, that they were not entitled to, thereby restating the second cause of action.

4. While apparently seeking recovery for the same wrongs alleged in the first and fourth causes of action against the MES defendants for breach of fiduciary duty, which seek damages totaling some $21.5 million, the amount demanded from these same defendants on the negligent mismanagement theory is $27 million. Claims asserted against defendant Trainer Wortham for, variously, breach of contract and breach of fiduciary duty likewise seek $27 million. No explanation is supplied for this discrepancy.

The eleventh cause of action demands that the MES defendants provide plaintiff with an accounting.

The documentary evidence adduced by defendants clearly contradicts the allegations in the complaint concerning the personal liability of the Rencks. In the absence of even an attempt by plaintiff to raise any opposition to the documented facts, Supreme Court properly granted accelerated judgment to the individual defendants, dismissing the complaint as against them. The Annuity Fund's 1999 statement of investment policy conclusively establishes that assets in the investment portfolio managed by Trainer Wortham were allocated in accordance with its provisions. Thus, no reason has been demonstrated for rebalancing the Annuity Fund's assets among the respective fund portfolios, and there is no basis for the first cause of action, even ignoring the MES defendants' lack of authority to reallocate the Annuity Fund's assets.

The contract and other record evidence establishes that the MES defendants lacked any authority to discharge an investment manager, removing any basis for plaintiff's fourth cause of action. Furthermore, the first and fourth causes of action are predicated on the same occurrences and transactions as the fifth cause of action for negligent mismanagement and the seventh cause of action, asserted only against MES, seeking contract benefit of the bargain damages. The breach of fiduciary duty claims against the MES defendants are duplicative of the contract claim asserted against the corporation and, consequently, were properly dismissed (see *Rockefeller Univ. v Tishman Constr. Corp.*, 240 AD2d 341, 343 [1997], *lv denied* 91 NY2d 803 [1997]).

As previously noted, the second cause of action, alleging breach of fiduciary duty in the form of charging excessive commissions, is predicated on the same occurrences and transactions and seeks identical contractual benefit of the bargain damages as the eighth cause of action for unjust enrichment, rendering it redundant (*id.*). Plaintiff does not explain why it is necessary to pursue this claim outside the contract, which expressly provides for defendant MES to be compensated exclusively through commission charges on securities transactions engaged in by the SBA Annuity Fund's investment managers. Plaintiff should be granted leave to replead its second cause of action as a breach of contract claim against MES, but the cause of action was properly dismissed as against the individual defendants, who did not assume any personal liability under the contract.

The fifth cause of action merely restates the first and fourth

causes of action as a negligence claim although, inexplicably, seeking greater damages. As this Court stated in *McMahan & Co. v Bass* (250 AD2d 460, 462-463 [1998], *lv denied and dismissed* 92 NY2d 1013 [1998]), "the alleged tortious conduct is innate to the performance of the contract. 'In the absence of a breach of a duty, independent of the contract, which results in injury, a tort claim will not lie (*Clark-Fitzpatrick, Inc. v Long Is. R.R. Co.*, 70 NY2d 382, 389)' (*IBM Credit Fin. Corp. v Mazda Motor Mfg. [USA] Corp.*, 152 AD2d 451, 453; *see also, SSDW Co. v Feldman-Misthopoulos Assocs.*, 151 AD2d 293, 295). As stated long ago in *Rich v New York Cent. & Hudson Riv. R.R. Co.* (87 NY 382, 398), 'It may be granted that an omission to perform a contract obligation is never a tort, unless that omission is also an omission of a legal duty.' " This cause of action is duplicative of the seventh cause of action for breach of contract asserted against MES and was properly dismissed.

The eighth cause of action for unjust enrichment restates the second cause of action claiming that plaintiff was charged excess commissions in the amount of $500,000. That contract damages are improperly sought under a claim for breach of fiduciary duty in the second cause of action does not alter the status of the unjust enrichment cause of action (*see Estate of Nevelson v Carro, Spanbock, Kaster & Cuiffo*, 290 AD2d 399, 400 [2002] ["it is not the theory behind a claim that determines whether it is duplicative"]). It is well settled that "plaintiffs cannot recover for unjust enrichment while simultaneously alleging the existence of an express contract covering the same subject matter" (*MJM Adv. v Panasonic Indus. Co.*, 294 AD2d 265, 266 [2002]; *see also Hohenberg Co. v Iwai N.Y.*, 6 AD2d 575, 578 [1958]). Plaintiff does not contend that the Services Agreement with defendant MES is not viable. "Without in some manner removing the express contract from the picture in the normal fashion (rescission, abandonment, etc.) it is not possible to ignore it and proceed in *quantum meruit*" (*La Rose v Backer*, 11 AD2d 314, 320 [1960], *amended* 11 AD2d 969 [1960], *affd* 11 NY2d 760 [1962]). Since this dispute is governed by the terms of an express contract, the cause of action for unjust enrichment was properly dismissed as redundant.

Finally, as to the eleventh cause of action, I find no grounds to impose a fiduciary duty on defendant MES, a party to the Services Agreement, so as to warrant an accounting. In any event, there is no basis to impose any fiduciary duty upon the corporation's officers, who are not party to the agreement. Plaintiff's reliance on *Adam v Cutner & Rathkopf* (238 AD2d 234 [1997]) is misplaced. In that case, investors' funds were

placed in an attorney escrow account, rendering the relationship between the attorneys and the investors, whose funds the firm held in trust, inherently fiduciary. In this matter, there is no such inherent relationship that requires the Rencks to account for funds received by their corporation in accordance with the contract. Thus, the action seeking an accounting from the individual defendants was properly dismissed.

Accordingly, I would affirm the order insofar as appealed from, which dismissed plaintiff's first, second, fourth, fifth, eighth and eleventh causes of action as against the individual defendants.