12-3579-cv
Muller-Paisner ex rel. Estate of Engel v. TIAA

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of June, two thousand thirteen.

PRESENT:  REENA RAGGI,
              SUSAN L. CARNEY,
                   *Circuit Judges*,
              JED S. RAKOFF,
                   *District Judge.*[*]

------------------------------------------------------------------------

VERA MULLER-PAISNER, as Executrix of the Estate of
Mary Engel, Deceased,

               *Plaintiff-Appellant*,

                               No. 12-3579-cv

        v.

TIAA, TEACHERS INSURANCE ANNUITY ASSOCIATES AND COLLEGE RETIREMENT EQUITY FUND, TIAA-CREF ENTERPRISES, INCORPORATED,

               *Defendants-Appellees*.

------------------------------------------------------------------------

APPEARING FOR APPELLANT:      MAX WILD, Esq., Warwick, New York.

---

[*] Judge Jed S. Rakoff, of the United States District Court for the Southern District of New York, sitting by designation.

APPEARING FOR APPELLEES:     JONATHAN   R.   HARWOOD (Lisa L. Shrewsberry, *on the brief*), Traub Lieberman Straus & Shrewsberry LLP, Hawthorne, New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (Gabriel W. Gorenstein, *Magistrate Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on August 13, 2012, is VACATED and the case is REMANDED for further proceedings.

Plaintiff Vera Muller-Paisner, executrix of the estate of Mary Engel (individually, "Engel"; as represented by Muller-Paisner, "estate"), appeals from the denial of her summary judgment motion and the award of summary judgment to defendants TIAA, Teachers Insurance Annuity Associates and College Retirement Equity Fund, and TIAA-CREF Enterprises, Inc. (collectively, "TIAA"). The estate asserts claims of breach of fiduciary duty, negligence, and unjust enrichment arising from Engel's transfer of over 90% of the assets in her retirement savings account, or approximately $1.25 million, to a non-guaranteed, single life variable annuity ("Annuity") six months before she died from emphysema.[1] See Muller-Paisner v. TIAA, 881 F. Supp. 2d 579, 582 (S.D.N.Y. 2012). We review decisions on cross-motions for summary judgment de novo, examining each party's

---

[1] The Annuity provided Engel with variable monthly payments during her life but, as it allowed for no beneficiary designation or survivorship right, "all payments end[ed] at [her] death." Authorization Form, J.A. 140; see also Acknowledgment Form, J.A. 164 ("Under this option, you receive lifetime income. Upon your death, all payments stop.").

2

motion "on its own merits" and drawing all permissible inferences "against the party whose motion is under consideration." Chandok v. Klessig, 632 F.3d 803, 812 (2d Cir. 2011). Summary judgment is appropriate only if the record reveals "no genuine dispute as to any material fact" and the movant's entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(a); see Ramos v. Baldor Specialty Foods, Inc., 687 F.3d 554, 558 (2d Cir. 2012). We assume the parties' familiarity with the facts and record of prior proceedings, including our earlier decision, Muller-Paisner v. TIAA, 289 F. App'x 461, 463 (2d Cir. 2008) (summary order), which we reference only as necessary to explain our decision to vacate the judgment in TIAA's favor and to remand the case for trial.

1.      Breach of Fiduciary Duty

    a.      Fiduciary Status

The district court concluded that the question of a fiduciary duty owed by TIAA to Engel turned on disputes of fact that could not be resolved as a matter of law in favor of either party. Assuming arguendo that the estate could prove such a fiduciary duty, the district court granted summary judgment to TIAA based on its determination that no reasonable jury could find a breach of duty.

We agree that the existence and extent of any fiduciary duty in this case must be resolved at trial based on a careful review of the parties' relationship. See Roni LLC v. Arfa, 18 N.Y.3d 846, 848, 939 N.Y.S.2d 746, 748 (2011) ("Ascertaining the existence of a fiduciary relationship inevitably requires a fact-specific inquiry." (internal quotation marks

3

omitted)).  Because a fiduciary relationship "exists only when a person reposes a high level of confidence and reliance in another," People ex rel. Cuomo v. Coventry First LLC, 13 N.Y.3d 108, 115, 886 N.Y.S.2d 671, 675 (2009), for the estate to succeed on its fiduciary claim, it must demonstrate that Engel placed such trust and confidence in TIAA, relying, explicitly or implicitly, on TIAA's knowledge and expertise.  Evidence of statements made by TIAA to induce trust and reliance are relevant to the fiduciary inquiry.  See Sergeants Benevolent Ass'n Annity Fund v. Renck, 19 A.D.3d 107, 110, 796 N.Y.S.2d 77, 79 (1st Dep't 2005) (identifying potential fiduciary status where defendants allegedly "held themselves out as experienced in the field of investment consulting and management," and unsophisticated plaintiffs relied on that expertise).

When we review the evidence in the light most favorable to the non-movant on the parties' cross-motions for summary judgment, however, we cannot resolve the fiduciary question as a matter of law for either party.  As the district court correctly concluded, this issue must await resolution at trial.

b.      Breach of Duty

i.      Duty of Loyalty

The estate submits that the district court erred in concluding that, even if TIAA acted as a fiduciary, it did not breach any duty of loyalty relating to Engel's selection of the Annuity.  See Muller-Paisner v. TIAA, 881 F. Supp. 2d at 597 (rejecting notion that "standards for conduct that apply to a trustee and other fiduciaries who plainly have a duty of undivided loyalty apply here").  We identify no error.

4

In EBC I, Inc. v. Goldman, Sachs & Co., 5 N.Y.3d 11, 799 N.Y.S.2d 170 (2005), the New York Court of Appeals held that when a securities underwriter gives expert advice to a client, the underwriter assumes a "limited" fiduciary duty to inform the client of "any material conflicts of interest that render the advice suspect," id. at 21–22, 799 N.Y.S.2d at 176 (holding that underwriter of initial public offering had fiduciary duty to disclose to issuer its "compensation arrangements with its [other] customers," whereby it was to receive percentage of profits generated in post-offering resales).  This limited duty is of no consequence here because the estate does not allege—much less attempt to prove—that TIAA withheld from Engel any details of the compensation it would derive from Engel's choice of payment options, including the Annuity.

Nor are the estate's conclusory contentions of self-dealing by TIAA sufficient to demonstrate disloyalty.  By definition, self-dealing occurs where the same party "stands on both sides of the bargaining table."  2 Tudor City Place Assocs. v. 2 Tudor City Tenants Corp., 924 F.2d 1247, 1251 (2d Cir. 1991).  As the district court correctly recognized, "the relationship between Dr. Engel and TIAA was of an entirely different character." Muller-Paisner v. TIAA, 881 F. Supp. 2d at 596.  TIAA did not sell the Annuity to itself, and it is not alleged to have controlled Engel's retirement savings account such that it could otherwise engage in self-dealing, for example, by trading for its own benefit.  The estate's assertion that TIAA "extorted" the letter from Engel confirming the Annuity's election, Appellant's Reply Br. 2, so that TIAA could offset losses caused by the recent financial downturn, is mere speculation unsupported by admissible evidence.

5

Accordingly, summary judgment was properly entered in favor of TIAA on the estate's fiduciary claim of breach of the duty of loyalty.

ii.     Duty of Care

We reach a different conclusion regarding the estate's fiduciary claim of breach of the duty of care insofar as TIAA is alleged negligently to have recommended or facilitated Engel's election of the Annuity at issue. See Sergeants Benevolent Ass'n Annuity Fund v. Renck, 19 A.D.3d at 109–10, 796 N.Y.S.2d at 79 (holding actionable as fiduciary breach allegedly negligent advice pertaining to fund asset allocation and investment objectives). The question is not, as TIAA urges, whether Engel received sufficient or accurate information regarding the payment option she did select. Nor is it whether that choice proved disadvantageous in retrospect. Cf. In re HSBC Bank USA, N.A., 98 A.D.3d 300, 309, 947 N.Y.S.2d 292, 300 (4th Dep't 2012) (noting, with respect to fiduciary control over investments generally, that "test is prudence, not performance, and therefore evidence of losses following the investment decision does not, by itself, establish imprudence" (quotation omitted)). Rather, the issue is whether TIAA, given the facts known or available to it, exercised the level of care in its dealings with Engel consistent with whatever fiduciary duty it might have assumed.

In granting summary judgment to TIAA, the district court highlighted the lack of evidence that TIAA had recommended the Annuity. See Muller-Paisner v. TIAA, 881 F. Supp. 2d at 584. The breach inquiry cannot, however, end there. The record evidence,

6

viewed in the light most favorable to the estate, would permit a jury to infer that TIAA had voluntarily assumed a duty to provide clients with advice about the investment products appropriate to their situations. For example, in its 2001 Annual Report, TIAA publicly disclosed its "key goal" of building "lasting partnerships" with customers, not only "by providing the products they will need throughout their lives," but also "by offering choices appropriate to their changing situations." J.A. 340 (emphasis added). That process, according to TIAA, "means helping people understand their choices and make sound decisions." J.A. 342 (emphasis added). Reinforcing these points, in July 2001, a TIAA vice president told a House of Representatives subcommittee that "[t]he responsibilities of a 'fiduciary advisor' are standards that we, at TIAA-CREF, operate under already." J.A. 406. See generally Dorking Genetics v. United States, 76 F.3d 1261, 1267 (2d Cir. 1996) (noting New York's recognition of liability for "negligence in performance of a duty that would not exist" absent defendant's "voluntary undertaking").

Moreover, the record supports an inference that TIAA counselors exercised some input into Engel's choice of a retirement investment option, and that they did so recognizing that she was ill, that she was having difficulty comprehending their conversations, and that the Annuity at issue was not a prudent choice in her circumstances. For example, a TIAA employee who spoke with Engel by telephone on August 30, 2000, noted that he had advised her that "at her age and [with] the balance [of money] involved," allocating the bulk of her savings to the Annuity "would be against the normal logic"—but he was not sure she had

7

understood what he was asking her.  J.A. 154; see also J.A. 135 (notation in preceding call summary that Engel "was difficult to understand").[1]  The following day, a TIAA employee noted that Engel had called requesting "help in choosing an allocation" and the employee had "reviewed investment options and suggested she consider the safety of TIAA traditional." J.A. 157.  Soon thereafter, in a September 5, 2000 letter to TIAA, Engel appeared to confirm her election of the Annuity, but revealed that she was "ill and cannot come to your offices." J.A. 161.  When another TIAA counselor spoke with Engel a few days later, on September 8, 2000, he noted that she "seemed very confused" on the phone.  J.A. 287.  Indeed, still another TIAA employee who spoke with Engel on September 14, 2000, expressed even greater concerns about both the prudence of the Annuity investment and Engel's ability to make that choice:  "This poor lady could have used some counseling, as she annuitized over $1 million dollars and chose no guaranteed period, and she sounds frail."  J.A. 283.

While TIAA may urge a jury to construe in its favor this and other evidence—including call summary statements by Engel that she had no beneficiaries or

---

[1] We concur in the district court's assessment that the call summaries, made pursuant to TIAA policy at or near the times of the conversations they recount, are admissible under the business records hearsay exception.  See Fed. R. Evid. 803(6).  The estate's conclusory argument that the records' "circumstances of preparation indicate a lack of trustworthiness," id., thus defeating their admissibility, is undercut by its own reliance on the summaries to prove its claims.  See United States v. Kaiser, 609 F.3d 556, 576 (2d Cir. 2010) (holding that questions regarding call notes' trustworthiness went to weight and not admissibility where notes otherwise qualified as business records).  TIAA's sworn statement that call-center employees were required to create the summaries as a part of their job duties also supports the estate's use of the records as party-opponent admissions against TIAA.  See Fed. R. Evid. 801(d)(2)(D).

8

family—we must apply the opposite presumption on a motion for summary judgment. We conclude that the totality of the evidence, viewed in the light most favorable to the estate, would permit a reasonable jury to conclude that TIAA had voluntarily assumed a duty to advise customers such as Engel about investment choices appropriate to their situations, and that TIAA breached that duty when, knowing that Engel was ill and having difficulty hearing and understanding what investment counselors were telling her, TIAA sold her an Annuity that it knew was against "normal logic." See generally Lerner v. Fleet Bank, N.A., 459 F.3d 273, 288 (2d Cir. 2006) (stating that financial institution, aware of "'[f]acts sufficient to cause a reasonably prudent person to suspect'" improper use of account holdings, acquires duty to investigate (quoting Norwest Mortgage, Inc. v. Dime Sav. Bank of N.Y., 280 A.D.2d 653, 654, 721 N.Y.S.2d 94, 95 (2d Dep't 2001))); see also N.Y. Comp. Codes R. & Regs. tit. 11, § 224.4(b) (directing insurance provider, before recommending annuity, to "make reasonable efforts to obtain the consumer's suitability information"); de Kwiatkowski v. Bear, Stearns & Co., 306 F.3d 1293, 1306 (2d Cir. 2002) (citing authority holding noncompliance with professional suitability standards to be evidence of negligence).[2]

---

[2] The fiduciary claim is thus distinguishable from the estate's dismissed fraud claims, which, we held, could not be premised on nondisclosure of TIAA's opinion that a non-guaranteed annuity "would not be a good purchase for" Engel given her age and failing health—information a reasonable retiree would already have known. Muller-Paisner v. TIAA, 289 F. App'x at 464–65. Similarly, because Engel's claim is not "based exclusively on TIAA's alleged misrepresentations," Appellees' Br. 32, we need not consider or decide whether Engel raises a triable issue that she received or relied on specific disclosures concerning her retirement payment choices, see Bell v. Pfizer, Inc., 626 F.3d 66, 75 (2d Cir. 2010) (holding that detrimental reliance is element "of fiduciary claim based on a material

9

A breach conclusion finds further support in the testimony of a TIAA manager, who testified at his deposition that when customers exhibited confusion or a lack of understanding, as Engel did here, TIAA would endeavor to communicate with them through an intermediary or to meet with them in person. Neither appears to have occurred here. Moreover, the estate adduced the opinion of an expert fiduciary that a lay person could have understood the Annuity provision for payments ceasing at death to mean that <u>monthly</u> payments would stop, with the remaining invested funds reverting to the annuitant's estate. Whatever the merit of that contention generally, in the circumstances of this case, a jury might accord the opinion some weight in concluding that TIAA's sale of what it recognized to be an ill-advised Annuity to a woman who seemed not to be understanding conversations with their counselors was a breach of TIAA's assumed fiduciary duty.

In so concluding, we note that the estate must further show that any breach of fiduciary duty proximately caused damages. <u>See</u> <u>Northbay Constr. Co. v. Bauco Constr. Corp.</u>, 38 A.D.3d 737, 738, 832 N.Y.S.2d 280, 281 (2d Dep't 2007) (reiterating that causation, both direct and proximate, is element of claim for fiduciary breach).

Accordingly, we vacate the award of summary judgment in favor of TIAA on the estate's claim for breach of the fiduciary duty of care.

---

misrepresentation or omission"). In any event, a jury finding that TIAA breached a duty to ensure that Engel comprehended her choice would necessarily imply detrimental reliance.

2.      Remaining Claims

The estate's negligence claim is reinstated to the extent it overlaps with the fiduciary duty claim; it is otherwise deemed abandoned due to the estate's failure to address it on appeal.  See Jackler v. Byrne, 658 F.3d 225, 233 (2d Cir. 2011) (vacating dismissal of claims addressed in appellate brief while affirming dismissal of unaddressed claims).  Moreover, because the unjust enrichment claim was dismissed for lack of proof of "misconduct constituting a breach of a fiduciary duty," Muller-Paisner v. TIAA, 881 F. Supp. 2d at 602, that claim is reinstated as well.  The estate is free to pursue a rescission remedy.

The judgment of the district court is VACATED and the case is REMANDED for further proceedings consistent with this order.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court

11