[886 NE2d 144, 856 NYS2d 522]

Appleton Acquisition, LLC, et al., Appellants, v National Housing Partnership et al., Respondents.

Argued February 12, 2008; decided March 18, 2008

## POINTS OF COUNSEL

*Herrick, Feinstein LLP,* New York City (*Milton Mollen, John R. Goldman* and *Grant R. Cornehls* of counsel), for appellants. I. Appellants have the common-law right to seek rescission of the merger. (*Theodore Trust U/A Dated Dec. 30, 1971 v Smadbeck,* 277 AD2d 67; *Breed v Barton,* 54 NY2d 82; *Matter of Willcox v Stern,* 18 NY2d 195; *Kavanaugh v Kavanaugh Knitting Co.,* 226 NY 185; *Eisenberg v Central Zone Prop. Corp.,* 306 NY 58; *Alpert v 28 Williams St. Corp.,* 63 NY2d 557; *Orinoco Realty Co. v Bandler,* 233 NY 24; *Matter of Cole,* 235 NY 48; *Hechter v New York Life Ins. Co.,* 46 NY2d 34; *Batas v Prudential Ins. Co. of Am.,* 281 AD2d 260.) II. The Appellate Division's dismissal of the entire complaint was error.

*Alston & Bird LLP,* New York City (*John F. Cambria* and *Craig H. Kuglar* of counsel), for respondents. I. The Appellate Division properly held that section 121-1102 (d) of the Partnership Law required dismissal of the complaint. (*People v Zinke,* 76 NY2d 8; *Ruzicka v Rager,* 305 NY 191; *Lanier v Bowdoin,*

282 NY 32; *Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577; *Matter of OnBank & Trust Co.*, 90 NY2d 725; *Breed v Barton*, 54 NY2d 82; *City of New York v State of New York*, 86 NY2d 286; *Connecticut Nat. Bank v Germain*, 503 US 249; *Conroy v Aniskoff*, 507 US 511; *Tompkins v Hunter*, 149 NY 117.) II. Section 489 of the Judiciary Law also mandates dismissal of the complaint. (*Koro Co., Inc. v Bristol-Myers Co.*, 568 F Supp 280; *Elliott Assoc., L.P. v Banco de la Nacion*, 194 F3d 363; *Banque de Gestion Privee-Sib v La Republica de Paraguay*, 787 F Supp 53.)

## OPINION OF THE COURT

GRAFFEO, J.

When a limited partnership merges with another entity, Partnership Law § 121-1102 grants limited partners the right to receive the fair market value of their partnership interests. The primary issue in this case is whether the statute allows a challenge by a limited partner to be brought in an action for rescission or money damages on the grounds that the transaction was premised on fraudulent or illegal acts by the general partner. We hold that a limited partner who objects to a merger on these grounds must raise them in an appraisal proceeding under the Partnership Law.

I

Beautiful Village Associates Redevelopment Company is a limited partnership created in 1978 for the purpose of acquiring and managing residential real estate. The sole general partner was defendant National Housing Partnership (NHP). NHP sold 33 units of limited partnership interest in Beautiful Village to 26 individuals (plaintiffs Limited Partners). Each limited partnership unit cost approximately $78,000.

Once the formation of Beautiful Village was complete, it purchased an apartment complex in Manhattan. Beautiful Village enrolled the building in the federal Department of Housing and Urban Development's (HUD) Section 8 low-income, affordable housing program and, as a result, received federal financing. By structuring the transaction in this manner, Beautiful Village was able to provide tax benefits to its limited partners.

The rents charged to tenants were governed by a schedule approved by HUD, which subsidized the difference between the rental rate specified in the contract and what a tenant could afford to pay. The contract between Beautiful Village and HUD

was set to expire in 2000, at which time Beautiful Village could renew the contract or opt out of the Section 8 program. In June 2000, Beautiful Village renewed its contract with the federal government and the apartment complex continued to provide Section 8 housing.

Early the next year, Beautiful Village obtained an unsecured line of credit from defendant AIMCO Properties, LP, which owned NHP and was a subsidiary of defendant Apartment Investment and Management Company (AIMCO). Unable to meet its payments, by the summer of 2002 Beautiful Village owed AIMCO Properties over $1.5 million.

Rather than foreclosing on the apartment complex, NHP and its parent companies in August 2002 proposed that Beautiful Village be merged with a new limited partnership owned by AIMCO Properties. Each of the Limited Partners was offered $100 or 2.5 common units of AIMCO Properties (each unit being worth about $42) for their partnership shares.[1] A proxy statement was sent to the Limited Partners that disclosed the conflict of interest between NHP and AIMCO Properties, and informed the Limited Partners that rejection of the merger would most likely cause AIMCO Properties to foreclose on the property, resulting in significant, adverse tax consequences for the Limited Partners. The proxy included copies of relevant New York statutes relating to the partnership agreement and proposed merger, including the right to institute a judicial appraisal proceeding to determine the fair market value of the limited partnership interests. None of the Limited Partners chose to exercise that right. In September 2002, the merger was approved and the Limited Partners' interests in Beautiful Village were extinguished.

In 2005, plaintiff Appleton Acquisitions, LLC—a firm not previously involved in the Beautiful Village transactions—contacted the former Limited Partners and expressed its interest in purchasing their equitable or partnership shares, together with any legal claims they had against AIMCO Properties, the partnership and the partnership's agents. Appleton offered a nonrefundable deposit of $2,000 and, if it ultimately chose to buy the shares, each Limited Partner would receive an additional $18,000. All of the Limited Partners accepted Appleton's offer.

---

1. Although not relevant to this appeal, some classes of limited partners were not given this choice and had to accept the cash offer.

Appleton then initiated this action against NHP, AIMCO Properties and AIMCO.[2] The first three causes of action sought rescission of the Beautiful Village merger and ancillary money damages on the grounds of fraud, breach of fiduciary duty and negligent misrepresentation. In connection with these three causes of action, Appleton claimed that defendants' proxy statement included intentionally false or misleading statements for the purpose of inducing the Limited Partners to sell their interests. Appleton further alleged that NHP failed to properly manage the affairs of the partnership and caused the value of the limited partnership shares to be inadequate because it neglected to participate in the federal Mark-Up-To-Market program when the contract with HUD was renewed in 2000.[3] These allegations were also used to support the fourth and fifth causes of action, which sought monetary damages for breach of contract and aiding a breach of fiduciary duty.

Defendants moved to dismiss the complaint, in part claiming that a limited partner's exclusive remedy for challenging the validity of a merger was through a statutory appraisal proceeding under Partnership Law § 121-1102. Supreme Court denied the motion. The Appellate Division reversed, concluding that because the Limited Partners did not challenge the merger in an appraisal proceeding, Partnership Law § 121-1102 (d) barred any action by limited partners seeking to attack the validity of

2. A prior federal action that Appleton filed against NHP was voluntarily withdrawn before commencement of the state case.

3. The Mark-Up-To-Market program was created in June 1999 as an emergency initiative promulgated by HUD. Its purpose was to preserve affordable housing in certain residential real estate markets where rent subsidies resulted in below market rental values and, thus, it was financially attractive for owners to opt-out of the Section 8 program and convert the properties to private, market-rate operations (see Report of US Dept of Hous & Urban Dev accompanying Notice H 99-15, at 2; US Dept of Hous & Urban Dev, Off of Multifamily Hous, Section 8 Renewal Policy, *Guidance for the Renewal of Project-Based Section 8 Contracts* § 3-1 [A]). For properties that met specific criteria, the Mark-Up-To-Market program provided additional subsidies that raised the total rent collected by the owner to prevailing market rates while ensuring that the properties continued to provide Section 8 affordable housing for at least five years. Congress made the program permanent in late 1999 (see Pub L 106-74, tit V, § 531, 113 US Stat 1109 [106th Cong, 1st Sess, Oct. 20, 1999], amending Multifamily Assisted Housing Reform and Affordability Act of 1997 § 524 [42 USC § 1437f Note]). With respect to the case before us, we will presume that Beautiful Village would have been eligible to participate in the Mark-Up-To-Market program when it extended its contract with HUD in 2000.

the merger, including those premised on allegations of fraud or illegality. We granted leave to appeal and now affirm.

## II

When a limited partnership merges with another entity, a limited partner who objects to the merger is "entitled to receive in cash . . . the fair value of his interest in the limited partnership" (Partnership Law § 121-1102 [c]). If the value of the limited partner's interest cannot be agreed upon, the limited partner is entitled to initiate a special appraisal proceeding under Partnership Law § 121-1105 (b).[4] Aside from the ability to request a judicial appraisal, Partnership Law § 121-1102 (d) specifies that a limited partner

> "shall not have any right at law or in equity under this article to attack the validity of the merger . . . , or to have the merger . . . set aside or rescinded, except in an action . . . [to contest] compliance with the provisions of the partnership agreement or [the notice provisions of section 121-1102 (a)]."

This language reveals a directive by the Legislature to make an appraisal proceeding the "sole remedy of a limited partner to attack the validity of a merger" (Rich, Practice Commentaries, McKinney's Cons Laws of NY, Book 38, Partnership Law art 8-A, 2008 Pocket Part, at 61).

Faced with this declaration of legislative intent, plaintiffs ask us to engraft a common-law exception onto Partnership Law § 121-1102 (d) for situations where a merger is alleged to be permeated with fraud or illegality. Plaintiffs note that the common law allowed shareholders of corporations to initiate a civil action based on these grounds and they urge that equity dictates that we recognize a similar cause of action for rescission by a limited partner.

In the common law, it has long been established that a corporate shareholder could challenge a merger on the grounds that it was induced by fraudulent or illegal activities (*see e.g. Breed v Barton*, 54 NY2d 82, 87 [1981]; *Eisenberg v Central Zone Prop. Corp.*, 306 NY 58, 68-69 [1953]; *Kavanaugh v Kavanaugh Knitting Co.*, 226 NY 185, 196 [1919]). When the Legislature enacted the Business Corporation Law, it decreed that a shareholder who dissented from a corporate merger trans-

---

4. The procedures utilized in these proceedings are delineated in Business Corporation Law § 623 (h)-(k) (*see* Partnership Law § 121-1105 [b]).

action could initiate an appraisal proceeding to determine the fair market value of the shareholder's interest in the corporation (*see* Business Corporation Law § 623 [h] [2]). Significantly, the Legislature also codified the common-law exception for corporate mergers premised on fraud or illegality and expressly recognized that a dissenting shareholder may "bring or maintain an appropriate action to obtain relief on the ground that [the merger] will be or is *unlawful or fraudulent* as to him" (Business Corporation Law § 623 [k] [emphasis added]; *see Breed v Barton*, 54 NY2d at 87; *Alpert v 28 Williams St. Corp.*, 63 NY2d 557, 567-568 [1984]).

In our view, a comparison of the text of Business Corporation Law § 623 (k) and Partnership Law § 121-1102 (d) is fatal to plaintiffs' argument. Both statutes share a common feature: the availability of an appraisal proceeding to determine the value of the interest held by a dissenting shareholder or limited partner. Yet the critical distinction is that section 623 (k) explicitly incorporates a common-law fraud or illegality exception to the exclusivity of the appraisal remedy, whereas Partnership Law § 121-1102 (d) does not. The Assembly sponsor explained that the Partnership Law was amended to promote the twin objectives of granting limited partners "appraisal rights similar to those shareholders [are given] under the Business Corporation Law" while also giving "greater assurance to the general partners as to the validity" and, thus, finality of a merger or consolidation (July 17, 1990 Letter from Assembly Sponsor, Bill Jacket, L 1990, ch 950, at 8). In light of the fact that section 623 (k) of the Business Corporation Law had been enacted many years earlier, the absence of the fraud or illegality exception in section 121-1102 (d) can be viewed only as an intentional legislative omission. Consequently, in the absence of a violation of the partnership agreement or inadequate notice of the proposed merger (*see* Partnership Law § 121-1102 [d]), the statute prohibits limited partners from relying on any form of relief other than a judicial appraisal—an approach that furthers the Legislature's interest in finality of mergers.[5] We therefore

5. This conclusion is buttressed by our recent decision in *Tzolis v Wolff* (10 NY3d 100 [2008]). In that case, we held that members of a limited liability company may bring derivative suits on the LLC's behalf because they are not prohibited from doing so by the relevant statutory provisions, which are silent on the matter. Here, in contrast, section 121-1102 (d) expressly restricts dissenting limited partners from using an action for rescission or money damages

conclude that the first three causes of action were properly dismissed.

We nevertheless recognize that fraud or illegality perpetrated by a general partner against limited partners is a serious concern requiring redress. The Legislature has designed the Partnership Law so that the statutory appraisal proceeding is the appropriate means of challenging fraudulent or illegal conduct by a general partner. The appraisal procedures for limited partnerships are incorporated from Business Corporation Law § 623 (*see* Partnership Law § 121-1105 [b]). The purpose of an appraisal proceeding is to assist the court in determining "the fair value [of a limited partner's interest] as of the close of business on the day prior to the [merger's] authorization date" (Business Corporation Law § 623 [h] [4]). In calculating that figure, a court is to consider "the nature of the transaction giving rise to the [limited partner's] right to receive payment . . . and *all other relevant factors*" (*id.* [emphasis added]).[6] This broad language allows a dissenting limited partner to raise the issue of fraud, illegality, breach of fiduciary responsibility or other deceitful acts by the general partner that may have resulted in less compensation than the limited partner should have received (*see generally Fleming v International Pizza Supply Corp.*, 676 NE2d 1051, 1057-1058 [Ind 1997]; *Steinberg v Amplica, Inc.*, 42 Cal 3d 1198, 1209, 729 P2d 683, 690 [1986]). Ultimately, we are left with a legislative recognition that limited partners are entitled to be compensated for the fair value of their interests in a partnership—and general partners may be held accountable for their fraudulent, deceptive or illegal acts— via an appraisal proceeding, not a civil action that seeks to set aside or otherwise attack a merger.

---

to dispute the validity of a merger on grounds unrelated to the terms of the partnership agreement or the statutorily required notice.

6. The statute also requires a court to consider the "effects on the [partnership] and its [partners], [and] the concepts and methods then customary in the relevant securities and financial markets for determining fair value of [interests in a partnership] engaging in a similar transaction under comparable circumstances" (Business Corporation Law § 623 [h] [4]). Notably, pretrial disclosure may be sought by the parties and authorized by the court, including "disclosure of any expert's reports relating to the fair value of the shares whether or not intended for use at the trial . . . and notwithstanding subdivision (d) of [CPLR] 3101" (*id.*). Given the scope of subdivision (h) (4), it is conceivable that the Limited Partners could have utilized an expert appraiser to establish that the failure to participate in the Mark-Up-To-Market program negatively affected the valuation of their shares in Beautiful Village.

### III

■ Appleton and the Limited Partners alternatively maintain, and our dissenting colleagues accept, that the fourth and fifth causes of action seeking money damages should not have been dismissed under section 121-1102 (d) because they were premised on allegations of pre-merger breach of fiduciary and contractual duties stemming from the mismanagement of Beautiful Village. The statutory exception to the exclusivity of the appraisal proceeding is limited to civil actions that challenge a merger on the grounds that it was not effectuated in compliance with the terms of the partnership agreement or the notice requirements of section 121-1102 (a) (*see* Partnership Law § 121-1102 [d]). The dissent suggests that limited partners can avail themselves of this exception by simply alleging that a general partner breached its obligations under the partnership agreement by engaging in fraudulent conduct in connection with a merger. We do not think the Legislature intended such a result for two reasons.

First, general partners always have fiduciary responsibilities to limited partners (*see e.g. Lichtyger v Franchard Corp.*, 18 NY2d 528, 536-537 [1966]) and any fraud by a general partner necessarily constitutes a violation of that duty. Plaintiffs would allow limited partners to circumvent the appraisal process merely by pleading that the general partner had been involved in fraudulent activities and that such conduct violated the partnership agreement. In our view, this would effectively nullify the Legislature's intent to impose restrictions on actions "at law or in equity . . . to attack the validity of the merger . . . or to have the merger or consolidation set aside or rescinded" (Partnership Law § 121-1102 [d]).

Second, and relatedly, the dissent incorporates the common-law fraud or illegality exception from Business Corporation Law § 623 (k) into Partnership Law § 121-1102 (d) by permitting fraud or illegality to be pleaded as a breach of the partnership agreement. Yet the dissent acknowledges that the plain language of section 121-1102 (d) does not codify the common-law corporate exception and instead prohibits allegations of this type—which are the basis of the first three causes of action—from being asserted in a cause of action for rescission of a merger. Under this view, the application of section 121-1102 (d) turns on the type of relief sought, a concept without support in light of the broad statutory language that prohibits "any" legal or equitable challenges to the validity of a merger, including ac-

tions for money damages. We conclude that the exception to section 121-1102 (d) pertains only to civil actions that seek to rescind or attack the validity of a merger on the grounds that there was a violation of the procedures specified in a partnership agreement for effectuating a merger or that there was a failure to comply with the notice requirements of subdivision (a) of the statute.

Close scrutiny of the allegations in the fourth and fifth causes of action discloses that plaintiffs focus on challenging the terms of the merger, the ultimate value of the Limited Partners' interests and the amount of compensation the Limited Partners received when the merger was approved—issues the Legislature has decreed must be addressed in an appraisal proceeding. Indeed, only one allegation in the complaint is arguably unrelated to the merger itself—defendants' failure to participate in the Mark-Up-To-Market program when the HUD contract was renewed in 2000. Significantly, however, this claim is used by plaintiffs to support their theory that they suffered a financial loss because defendants misrepresented "the valuation of the Limited Partners' interests in the Partnership[ ]" and "fail[ed] to advise the Limited Partners that the offering price for Units of Partnership in the Merger was inadequate and unfair." Hence, the Limited Partners allege that they were induced to accept an unfair price for their interests.

Acceptance of the Limited Partners' argument would allow them to bypass the appraisal process even though they are asserting that the compensation they received for their shares was inadequate. Although the fourth and fifth causes of action do not directly ask to rescind the merger, it is readily apparent that the claims are nevertheless veiled attacks on the validity of the merger—the propriety of the statements purportedly made by defendants and the adequacy of the compensation offered for approval of the merger—that section 121-1102 (d) prohibits from being raised outside the context of an appraisal proceeding. The fourth and fifth causes of action were therefore properly dismissed.[7]

Accordingly, the order of the Appellate Division should be affirmed, with costs.

CIPARICK, J. (dissenting in part). I agree with the majority

---

7. In light of our determination, defendants' alternative basis for an affirmance (which was not addressed by the Appellate Division) is academic.

that plaintiffs' first three causes of action were properly dismissed. Because, however, Partnership Law § 121-1102 (d) only prohibits a limited partner from attacking the validity or seeking to set aside or rescind a merger or consolidation, and specifically exempts "an action or contest with respect to compliance with the provisions of the partnership agreement," I believe a common-law action for damages under a theory of breach of contract and aiding and abetting such breach would lie. I, therefore, disagree and respectfully dissent as to the dismissal of plaintiffs' fourth and fifth causes of action, as they do not directly attack the merger as such.

It is well established that statutory interpretation begins with the plain language of the statute. "As the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof" (*Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 583 [1998]). We have always preferred a literal reading and look to the unambiguous language of the statute for guidance as to what the Legislature intended. Partnership Law § 121-1102 (d) provides that:

> "[a] limited partner of a constituent limited partnership who has a right under this article to demand payment for his partnership interest shall not have any right at law or in equity under this article to attack the validity of the merger or consolidation, or to have the merger or consolidation set aside or rescinded, except in an action or contest with respect to compliance with the provisions of the partnership agreement or [the notice provisions of] subdivision (a) of this section."

Nowhere does the text of the statute expressly prohibit the availability of the common-law right of a limited partner to seek damages as a result of a breach of contract premised on a general partner's alleged violation of a partnership agreement and the aiding and abetting of such breach by others. Neither does there exist a clear and specific legislative intent to abrogate the common-law remedy of breach of contract (*see Tzolis v Wolff*, 10 NY3d 100, 102 [2008]; *Hechter v New York Life Ins. Co.*, 46 NY2d 34, 38-39 [1978]). In fact, there exists no legislative history that supports defendants' and the majority's view that the Legislature purposefully intended to make appraisal rights the exclusive remedy for aggrieved limited partners. The statute is very specific that a limited partner has no right to attack the

validity of a merger and is relegated to exercising dissenter's appraisal rights, but it does not preclude a common-law action for failure to comply with provisions of the partnership agreement—a breach of contract claim.

I respectfully disagree with the majority that, by allowing the breach of contract actions to proceed, the limited partners will be allowed to "bypass the appraisal process" (majority op at 259) and that the claims are "veiled attacks on the validity of the merger" (majority op at 259). The complaint is simply an allegation asserting that National Housing Partnership (NHP) breached its contractual duty under the partnership agreement and that as a result of the alleged breach the limited partners suffered damages. Such a theory of liability does not "attack the validity of the merger or consolidation" or seek "to have the merger or consolidation set aside or rescinded," nor does it incorporate the common-law fraud or illegality exception from Business Corporation Law § 623 (k) as suggested by the majority (majority op at 258). The Legislature surely did not intend section 121-1102 to insulate a general partner from an action for damages resulting from a breach of contract merely because the merger or consolidation was successfully completed.

It is well settled that a court, when deciding whether to grant a motion to dismiss pursuant to CPLR 3211, must take the allegations asserted within a plaintiff's complaint as true, and accord plaintiff the benefit of every possible inference, determining only whether the facts as alleged fit within any cognizable legal theory. Here, plaintiffs assert that NHP not only breached its fiduciary duty owed to the limited partners under the partnership agreement, but also specifically breached the partnership agreement prior to the merger by its chronic mismanagement of the property. Plaintiffs also assert that NHP's failure to take advantage of readily available federal subsidies both decreased the value of the partnership itself and caused a financial loss to the partnership from the loss of additional rental income. Plaintiffs further assert that the AIMCO defendants aided and abetted these breaches by allowing its general partner to engage in transactions not reasonably competitive with those that could have been obtained from unaffiliated persons. Therefore, plaintiffs' fourth cause of action seeking recovery for damages, including loss of income, incurred as a result of NHP's alleged breach of contract and of its fiduciary duties under the

partnership agreement is cognizable as is the fifth cause of action brought against the AIMCO defendants for allegedly aiding and abetting the breach, as both causes of action fall within the exception of section 121-1102.

Recently, in *Tzolis v Wolff* (10 NY3d 100 [2008]), we held that a limited liability company (LLC) member had the right to assert a derivative cause of action on behalf of the LLC under common law, despite the fact that the legislative history could not conclusively establish why the Legislature omitted text from the LLC statute that would specifically authorize LLC members to bring a derivative suit.

We held in *Tzolis* "that members of a limited liability company (LLC) may bring derivative suits on the LLC's behalf, even though there are no provisions governing such suits in the Limited Liability Company Law" (*Tzolis* at 102). Here, we have a statute prohibiting a limited partner, who had the right under Partnership Law § 121-1102 (d) to demand payment for its partnership interest, from seeking redress. This is so because if the limited partner fails to exercise appraisal rights, it loses its right to either attack the validity of or rescind the merger or consolidation. Nowhere does Partnership Law § 121-1102 (d) likewise prohibit a plaintiff from asserting a claim for damages under a breach of contract theory.

"To hold that there is no remedy when corporate fiduciaries use corporate assets to enrich themselves was unacceptable in 1742 and in 1832, and it is still unacceptable today" (*Tzolis* at 105).\* The rule proposed by the defendants and adopted by the majority allows a merger transaction, in the limited partnership context, to become in effect a general release for a contractual claim for damages by a limited partner against a general partner, regardless of whether the damages arose pre- or post-merger. It relegates the aggrieved limited partner to asserting its rights by way of an appraisal proceeding, a remedy that is not always adequate and certainly would not be adequate here.

---

\* Indeed, Chief Justice John Marshall wrote,

"[i]f, on tracing the right to contract, and the obligations created by contract, to their source, we find them to exist anterior to, and independent of society, we may reasonably conclude that those original and pre-existing principles are, like many other natural rights, brought with man into society; and, although they may be controlled, are not given by human legislation" (*Ogden v Saunders*, 12 Wheat [25 US] 213, 345 [1827]).

Therefore, I would modify the order of the Appellate Division to reinstate plaintiffs' fourth and fifth causes of action.

Judges READ, SMITH and PIGOTT concur with Judge GRAFFEO; Judge CIPARICK dissents in part and votes to reinstate the fourth and fifth causes of action in a separate opinion in which Chief Judge KAYE and Judge JONES concur.

Order affirmed, with costs.