Vera MULLER–PAISNER,
Plaintiff–Appellant,

v.

TIAA, TIAA–CREF Enterprises, Inc., Teachers Insurance and Annuity Association, and College Retirement Equities Fund, Defendants–Appellees.

No. 06–4307–cv.

United States Court of Appeals, Second Circuit.

Aug. 15, 2008.

Max Wild, Warwick, NY, for Appellant.

Lauren R. Goldman (Scott A. Chesin, on the brief), Mayer Brown Rowe & Maw LLP, New York, NY, for Appellees.

PRESENT: Hon. SONIA SOTOMAYOR, Hon. REENA RAGGI, Circuit Judges, Hon. CAROL BAGLEY AMON, District Judge.[1]

### SUMMARY ORDER

Plaintiff Vera Muller–Paisner appeals from the district court's dismissal of her complaint, which seeks compensation from the defendants in her capacity as executrix of the estate of the late Mary Engel ("decedent"). Muller–Paisner brings a federal securities fraud claim, as well as claims under New York common law for fraud, breach of fiduciary duty, and negligent misrepresentation. The standard of review of the district court's dismissal of these claims pursuant to Federal Rule of Civil Procedure 12(b)(6) is *de novo. See Faulkner v. Beer,* 463 F.3d 130, 133 (2d Cir. 2006); *Global Network Commc'ns, Inc. v. City of N.Y.,* 458 F.3d 150, 154 (2d Cir. 2006). We accept as true all of the allegations in the complaint and draw all reasonable inferences in favor of Muller–Paisner. *See Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.,* 517 F.3d 104, 115 (2d Cir.2008).

This dispute stems from the purchase of a fixed annuity by the decedent from the defendants for approximately $1.2 million. The annuity was to pay decedent $8,000 per month for life, with all payments to cease at her death. If decedent had lived for approximately 12 years from the date on which she purchased her annuity, she would have recovered the purchase price.[2] Unfortunately, decedent died six months after purchasing the annuity, having collected only $48,000 in payments. At the time she purchased the annuity, decedent had been suffering from advanced emphysema. After Muller–Paisner discovered that the bulk of decedent's assets had been used to purchase this annuity, leaving almost nothing to be disposed of in accord with decedent's will, she conducted her own investigation into the decedent's purchase and soon thereafter brought this lawsuit.

### I. The Fraud Claims

■ On appeal, Muller–Paisner argues that the district court erred when it considered certain documents outside of the complaint in dismissing her two fraud

---

1. The Honorable Carol Bagley Amon, District Judge for the United States District Court for the Eastern District of New York, sitting by designation.

2. Defendant points out, by way of background, that the average life expectancy for a 70 year-old Caucasian woman is 16 years. Had decedent reached this age, the annuity would have paid out approximately $1.5 million.

claims pursuant to Rule 12(b)(6). Because the fraud claims are properly dismissed by reference to only the complaint and documents expressly relied upon in the complaint, their dismissal is affirmed. *See Baker v. Latham Sparrowbush Assocs.*, 72 F.3d 246, 252 (2d Cir.1995) ("Under well-settled principles of law, this Court may affirm whenever the record is sufficient to permit its conclusions of law, regardless of whether our reasoning differs from that of the court below.").

The elements of claims for federal securities fraud and New York common law fraud are similar. "To state a cause of action under Section 10(b) or Rule 10b–5 plaintiffs must prove that [the defendants] (1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that plaintiffs' reliance was the proximate cause of their injury." *In re IBM Corporate Sec. Litig.*, 163 F.3d 102, 106 (2d Cir.1998) (citing *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 264 (2d Cir.1993) and *Burke v. Jacoby*, 981 F.2d 1372, 1378 (2d Cir.1992)); *see also Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir.2001). "Under New York law, to state a claim for fraud a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir.2001); *see also Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 186–87 (2d Cir. 2004) (stating the fraud elements in the particular context of a claim for fraudulent misrepresentation); *Flickinger v. Harold C. Brown & Co.*, 947 F.2d 595, 599 (2d Cir.1991). The district court dismissed both fraud claims because Muller–Paisner failed to adequately allege both a material-

ly misleading misstatement or omission, and scienter. Because we agree that the complaint failed to allege a materially misleading statement or omission, we need not reach the issue of scienter.

In order to allege the "material misstatement or omission" element of a fraud claim, a plaintiff must comply with the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) (for common law fraud) or the Private Securities Litigation Reform Act of 1995 ("PSLRA") (for securities fraud). These standards require a plaintiff to specify the statements or omissions that the plaintiff contends were fraudulent, identify the speaker, state where and when the statements were made, and explain why the statements were fraudulent. *See* 15 U.S.C. § 78u–4(b)(1); *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir.2000) (citing *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir.1994)); *Eternity Global Master Fund Ltd.*, 375 F.3d at 187; *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir.2001); *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir.1986).

There is only one statement in the complaint that is alleged with the particularity required by Rule 9(b) and the PSLRA. The Complaint references the statement found in Part III of the "Your Service Directory" booklet to the effect that "[y]ou can change your beneficiary at any time, even after you've begun receiving annuity income." Compl. ¶ 34. This booklet was mailed to the decedent immediately before she finalized her purchase. The complaint alleges that the statement regarding change of beneficiary was materially misleading because it suggests that her annuity payments would survive her death when in fact her annuity payments ceased at death because she had selected an annuity option without a guarantee period.

The "material misstatement or omission" element is analyzed objectively from

the perspective of the reasonable investor. *See In re IBM Corporate Sec. Litig.,* 163 F.3d at 106–07; *Moore v. PaineWebber, Inc.,* 189 F.3d 165, 170 (2d Cir.1999). "At the pleading stage, a plaintiff satisfies the materiality requirement ... by alleging a statement or omission that a reasonable investor would have considered significant in making investment decisions." *Ganino v. Citizens Utils. Co.,* 228 F.3d 154, 161 (2d Cir.2000) (citing *Basic Inc. v. Levinson,* 485 U.S. 224, 231, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988)). Here, the statement at issue would not have mislead the reasonable investor. Part I of the booklet stated that decedent's annuity choice was a life annuity with no guaranteed period, and it plainly stated that the payments would cease at her death. Part III of the booklet then explained to those who had chosen an option which allowed them to designate beneficiaries that they could change those designations. No reasonable investor of ordinary intelligence would have believed that this statement modified the description of a choice of annuity in Part I, which had no provision for a beneficiary since payments ceased at death.[3] Accordingly, Muller–Paisner has failed to adequately allege a materially misleading affirmative statement.

■ In addition to this one affirmative misstatement, Muller–Paisner also seems to be pursuing her fraud claims on a theory of fraudulent omissions—namely, that the defendants' representatives failed to advise the decedent that the chosen annuity was not a good fit for her in light of her physical condition. As an initial matter, the defendants are correct to note that no fraudulent omission is identified with the requisite particularity. Moreover, even if the allegedly actionable omissions had been identified more clearly, Muller–Paisner has not alleged an omission that would

have misled a reasonable investor. As is noted above, a misstatement or omission is material if the reasonable investor would have considered it significant in making investment decisions. Accordingly, with respect to omissions, "[t]here must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." *Ganino,* 228 F.3d at 162 (citing *Basic,* 485 U.S. at 231–32, 108 S.Ct. 978) (internal quotation marks omitted). "An omitted fact may be immaterial if the information is trivial, or is 'so basic that any investor could be expected to know it.'" *Id.* (internal citation omitted) (quoting *Levitin v. PaineWebber, Inc.,* 159 F.3d 698, 702 (2d Cir.1998)).

Here, it is conceded in the complaint that the defendants informed the decedent that the annuity product she had chosen would cease paying out at her death. In fact, it alleges that decedent herself wrote a letter confirming that this was the annuity option, bearing this characteristic, that she wished to purchase. Any reasonable investor could do the simple multiplication and determine how many payments would be required for her to recover the purchase price of the annuity. Moreover, the only reasonable inference that can be drawn from the complaint is that the decedent knew at least as much about her medical condition as did the defendants' representatives—who are alleged only to have known that she had a weak voice and shaky handwriting. If a reasonable investor knew that she was ill, that a particular annuity would stop paying out at her death, and that she would need to live 12 years to recover the purchase price, the opinion of an employee of the insurance company that this product would not be a

---

**3.** We may consider the booklet for the purposes of this 12(b)(6) motion because it is

directly quoted from in the complaint. *See Faulkner,* 463 F.3d at 134.

good purchase for her would not "significantly alter[ ] the total mix of information made available." *Ganino,* 228 F.3d at 162 (internal quotation marks omitted). The "materiality" requirement does not impose a duty to disclose an opinion made obvious by the disclosed facts. Accordingly, Muller–Paisner has not adequately alleged a materially misleading omission, and the district court's dismissal of the common law and securities fraud claims is affirmed.

## II. The Fiduciary Duty and Negligent Misrepresentation Claims

■ The district court dismissed Muller–Paisner's fiduciary duty and negligent misrepresentation claims for failure to adequately allege that the defendants owed the decedent an applicable duty.[4] To state a claim for breach of fiduciary duty in New York, a plaintiff need only allege that the duty existed and that it was breached. *See Appleton Acquisition, LLC v. Nat'l Hous. P'ship,* 10 N.Y.3d 250, 258, 856 N.Y.S.2d 522, 886 N.E.2d 144 (2008); *EBC I, Inc. v. Goldman, Sachs & Co.,* 5 N.Y.3d 11, 19–22, 799 N.Y.S.2d 170, 832 N.E.2d 26 (2005). An action for negligence, in New York, requires a plaintiff to prove three elements: " '(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof.' " *Alfaro v. Wal–Mart Stores, Inc.,* 210 F.3d 111, 114 (2d Cir.2000) (quoting *Akins v. Glens Falls City Sch. Dist.,* 53 N.Y.2d 325, 333, 441 N.Y.S.2d 644, 424 N.E.2d 531 (1981)).

The "duty" element of these two causes of action requires the same inquiry. We have noted that "under New York law, a plaintiff may recover for negligent misrep-

resentation only where the defendant owes her a fiduciary duty." *Stewart v. Jackson & Nash,* 976 F.2d 86, 90 (2d Cir.1992); *see also White v. Guarente,* 43 N.Y.2d 356, 362–63, 401 N.Y.S.2d 474, 372 N.E.2d 315 (1977); *Dornberger v. Metro. Life Ins. Co.,* 961 F.Supp. 506, 545 (S.D.N.Y.1997).

"A fiduciary relationship exists under New York law when one person is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *Flickinger,* 947 F.2d at 599 (internal quotation marks and alteration omitted). Factors to consider in determining whether or not a fiduciary relationship exists include the nature of the relationship, whether or not the alleged fiduciary had or appeared to have unique or special expertise, whether the alleged fiduciary was aware of the use to which information would be put, and the purpose for which the information was supplied. *Kimmell v. Schaefer,* 89 N.Y.2d 257, 264, 652 N.Y.S.2d 715, 675 N.E.2d 450 (1996); *see also Murphy v. Kuhn,* 90 N.Y.2d 266, 272, 660 N.Y.S.2d 371, 682 N.E.2d 972 (1997) (noting that, in the commercial context, courts in other jurisdictions have considered factors such as whether or not the alleged fiduciary was aware that his or her advice was being relied upon, the course of dealing between the parties, and whether or not the customer was paying the agent for advice above and beyond the premiums/purchase price of the product); *Eternity Global Master Fund Ltd.,* 375 F.3d at 187–88 (similar formulation looking to the nature of the relationship and whether or not the alleged fiduciary could reasonably foresee reliance on information he provides).

---

4. In addition to arguing that no duty existed, the defendants briefly argue that, even assuming a duty, Muller–Paisner has not alleged that it was breached. However, the district court did not reach this issue, and we decline to address it here. *See In re Harris,* 464 F.3d 263, 268 n. 3 (2d Cir.2006) (citing *Hartford Courant Co. v. Pellegrino,* 380 F.3d 83, 90 (2d Cir.2004) for the proposition that we ordinarily refrain from analyzing issues that the district court did not reach).

By their nature, arms-length commercial transactions ordinarily do not involve relationships defined by the New York courts as fiduciary. *See Mid–Island Hosp., Inc. v. Empire Blue Cross & Blue Shield,* 276 F.3d 123, 130 (2d Cir.2002). However, a fiduciary duty may arise in the context of a commercial transaction upon a requisite showing of trust and confidence. *See id.* ("A debtor-creditor relationship is not by itself a fiduciary relationship although the addition of a relationship of confidence, trust, or superior knowledge or control may indicate that such a relationship exists." (internal quotations omitted)); *Mfrs. Hanover Trust Co. v. Yanakas,* 7 F.3d 310, 318 (2d Cir.1993) (noting that although no fiduciary duties arise in the ordinary debtor/creditor relationship, they may arise under the proper circumstances) (quoting *Fisher v. Bishop,* 108 N.Y. 25, 28, 15 N.E. 331 (1888)); *Murphy,* 90 N.Y.2d at 270–72, 660 N.Y.S.2d 371 (noting that fiduciary duties may arise in the insurance context if the requisite trust and confidence is established); *Batas v. Prudential Ins. Co.of Am.,* 281 A.D.2d 260, 724 N.Y.S.2d 3, 7 (1st Dep't 2001) (recognizing that fiduciary duties may arise in the insurance context where circumstances are appropriate).

In this case, the complaint alleges that the defendants advertise that they have many insurance products and investment options, and that they will assist customers in purchasing the best option available to them in order to maximize their income for the balance of their post-retirement lives. The complaint also alleges that the defendants advertise that they have a considerable infrastructure to help people identify the resources that best fit their needs. Additionally, the complaint alleges

that the defendants target these advertisements to a specific class of people, retired educators. Moreover, in her reply brief Muller–Paisner cites public statements of employees of the defendants including statements in congressional testimony and on the defendants' website, to the effect that they offer a wide range of investment products, that they will help their customers choose among those products, and that trust is a crucial dimension of the relationship between the defendants and their customers.[5] We conclude that under the applicable standards Muller–Paisner's allegations regarding the existence of a duty, for the purposes of both the fiduciary duty and negligence claims, are sufficient to withstand the defendants' motion to dismiss. *See, e.g., Dornberger,* 961 F.Supp. at 546–47 (allowing breach of fiduciary duty claim against insurer to proceed to discovery in light of allegations similar to those at issue here). Accordingly, the district court's dismissal of these claims is reversed and remanded for further proceedings.

We AFFIRM the judgment of the district court in part, REVERSE in part, and REMAND the case for proceedings consistent with this order.

---

5. The congressional testimony is an appropriate subject for judicial notice as a public record for the fact that the statements were made. *See Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir.2007); *Mangiafico v. Blumenthal,* 471 F.3d 391, 398 (2d Cir.2006). Judicial notice may be taken of the defendants' website for the fact of its publication. *See Alliance Premier Growth Fund v. Alliance Capital Mgmt. L.P.,* 435 F.3d 396, 401 n. 15 (3d Cir.2006).